1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD FITZGERALD,                    No.  2:12-cv-02932-MCE-KJN

12              Plaintiff,

13        v.                                **MEMORANDUM AND ORDER**

14   EL DORADO COUNTY, SHERIFF
     JOHN D'AGOSTINI, UNDERSHERIFF
15   RICH WILLIAMS and Does 1 through
     20, inclusive,
16
              Defendants.
17

18

19        This action proceeds on Plaintiff Richard Fitzgerald's ("Plaintiff") First Amended

20   Complaint ("FAC"), which seeks to recover damages against Defendants Sheriff John

21   D'Agostini ("D'Agostini"), Undersheriff Rich Williams ("Williams"), and El Dorado County

22   ("County") (collectively "Defendants") on various legal theories.  Plaintiff asserts three

23   claims against all Defendants: (1) retaliation in violation of the First Amendment;

24   (2) violation of his due process rights; and (3) violation of his equal protection rights.

25   Plaintiff asserts additional claims against the County alone: (4) retaliation under state

26   law; and (5) age discrimination under both state and federal law.[1]  Presently before the

27        [1] In discovery, Plaintiff conceded that the Third, Fourth, and Fifth Claims for Relief are not
     asserted against individual Defendants D'Agostini and Williams.  Pl.'s Resp. to Reqs. for Admiss. Ex. B,
28   ECF No. 31-4, at ¶¶ 6-13.

                                              1

1  Court are Defendants' motions for summary judgment, or alternatively partial summary

2  judgment, pursuant to Federal Rule of Civil Procedure 56 (ECF No. 31-32), and

3  Defendants' Motion to Strike Errata Sheet (ECF No. 33), both of which Plaintiff timely

4  opposed.[2]  ECF Nos. 31-32, 43.  For the following reasons, Defendants' motions for

5  summary judgment are GRANTED in part and DENIED in part.[3]

6

7                                    **BACKGROUND**[4]

8

9          In 1991, Plaintiff was hired by the El Dorado County Sheriff's Department

10  ("Sheriff's Department") to work in the patrol unit.  Pl.'s Resp. to Defs.' Joint Statement of

11  Undisputed Facts ("SUF"), ECF No. 31-2, at ¶ 1.  Subsequently, in 1994, Plaintiff

12  became a detective.  Id. at ¶ 2.  He held that position until 2012, for a total of 18 years.

13  Id.  In 2010, D'Agostini was elected Sheriff of El Dorado County, and, shortly thereafter,

14  he appointed Williams as Undersheriff.  Id. at ¶¶ 4-5. This dispute arises out of oral and

15  written statements made by Plaintiff in opposition to two changes Williams and/or

16  D'Agostini proposed or instituted with respect to the investigations unit between 2011

17  and 2012.

18          First, D'Agostini proposed recruiting retired police officers to volunteer in the

19  property crime investigation division.  SUF ¶ 9.  He made his proposal at a meeting

20  attended by all of the detectives and several command staff personnel.  Id. at ¶ 7.

21  D'Agostini explained that he had met the retired officers during his campaign and

22  ────────────────

23          [2] Because the Court did not rely on Plaintiff's Deposition Errata Sheet in reaching its decision,
Defendants' Motion to Strike Errata Sheet is DENIED as moot.  Similarly, the Court did not rely on

24  Plaintiff's Declaration or the other evidence Defendants challenge in their additional objections (ECF
No. 54), which are also overruled as moot.

25          [3] Because oral argument would not be of material assistance, the Court ordered this matter
submitted on the briefing. E.D. Cal. Local Rule 230(g).

26

27          [4] The Court notes that the bulk of Plaintiff's recitation of the facts in his opposition briefs was
single-spaced in violation of Eastern District of California Local Rule 130(c).  The Court declines to strike
any or all of Plaintiff's current papers at this time, but admonishes the parties that failure to comply with the

28  Local Rules in the future may result in sanctions.

1  thought that they could help with the heavy workload of the property crime detectives.

2  Id. at ¶ 9.  He then asked for the officers' input regarding his plan.  Id. at ¶ 10.  Plaintiff

3  told D'Agostini that he did not think the plan would work because of issues affecting the

4  chain of custody for evidence, as well as the need to safeguard against leaked

5  information.  Id.  Several other officers related their concerns with D'Agostini's proposal

6  as well.  Id. at ¶ 11.  From Plaintiff's account, D'Agostini then became upset and left the

7  meeting.  DF ¶ 97; Strasser Depo. Pl.'s Ex. I, ECF No. 40-2, at 72:14-74:3.

8      Second, D'Agostini and Williams proposed and later implemented a policy to

9  rotate detectives out of the investigations unit and into other roles within the department.

10  SUF ¶ 18.  Williams assigned Lieutenant Dale Spear ("Spear") to draft the rotation

11  policy.  Id.  At Williams' direction, Spear shared a copy of the rotation policy with the

12  detectives at a meeting on November 16, 2011.  Id. at ¶ 21.  At that meeting, Spear

13  asked for the detectives' feedback before the policy was to go into effect on January 1,

14  2012.  Id.; Sheriff's New Policy Directive Pl.'s Ex. L, ECF No. 31-8, at 35-36.  All of the

15  detectives at the meeting, including Plaintiff, expressed strong opposition to the rotation

16  policy.  Id. at ¶ 22.  Plaintiff presents evidence that he was one of the most vocal

17  opponents at the meeting, along with detectives Rich Strasser ("Strasser") and John

18  Yaws ("Yaws").  Strasser Depo. at 99:13-15.  According to Strasser's deposition, Plaintiff

19  argued at that meeting that implementing a rotation policy for detectives would hurt the

20  department and that the majority of unsolved homicides in their jurisdiction were a direct

21  result of inexperienced investigators.  Id. at 101:3-9.  In Plaintiff's deposition, he states

22  that he met privately with Spear after the meeting and voiced his concerns that the

23  rotation policy would jeopardize the departments' ability to solve crimes and could lead

24  to age discrimination.  Fitzgerald Depo. Pl.'s Ex. C, ECF No. 31-8, at 232:14-233:8.

25      According to Plaintiff, he, Strasser, and the El Dorado County Deputy Sheriff's

26  Association ("DSA") filed a grievance shortly after the meeting to oppose the rotation

27  policy.  Strasser Decl. Pl.'s Ex. H, ECF No. 40-2, at ¶ 5.  Plaintiff presents further

28  evidence that he attempted to obtain the signature of Sergeant Tom Hoagland

1   ("Hoagland") on the grievance, but that Hoagland declined to endorse the grievance in

2   front of a room filled with other detectives.  Strasser Decl. Pl.'s Ex. H, ECF No. 40-2, at

3   ¶¶ 5-6; Hoagland Depo. Pl.'s Ex. E, ECF No. 40-1, at 176:4-24.  Plaintiff also presents

4   evidence that he took the lead in drafting proposed amendments to the policy, that he

5   presented the proposal to Hoagland, Spear, and Sergeant Dreher, and that he was told

6   the document would be presented to D'Agostini.  Strasser Decl. at ¶ 8; Strasser Depo. at

7   123:14-16; Proposed Changes and Justifications Pl.'s Ex. 18, ECF No. 38.

8        On or about November 30, 2011, D'Agostini and Williams withdrew the rotation

9   policy after receiving a "cease and desist" letter from the attorney for the DSA.  SUF

10   ¶¶ 24-25; DSA Letter Ex. M, ECF No. 31-8, at 39-41.  Despite withdrawing the rotation

11   policy, D'Agostini and Williams continued to discuss reassigning detectives out of the

12   investigations unit.  SUF ¶ 26.  They eventually determined that either Plaintiff or

13   Strasser should be one of the detectives reassigned.  Id. at ¶ 31.  Defendants allege that

14   D'Agostini and Williams made this decision because Plaintiff and Strasser had been in

15   the detective position for the longest period of time.  Id.

16        On March 29, 2012, Plaintiff was informed that he was being reassigned to the

17   patrol unit as of April 21, 2012.  SUF ¶ 35.  Plaintiff was 56 years old at that time.  Id. at

18   ¶ 36.  There were three other detectives reassigned to the patrol unit: two were 43 years

19   old and one was 34 years old.  Id.

20        On behalf of Plaintiff and the other reassigned detectives, the DSA initiated the

21   employee grievance process outlined in the Memorandum of Understanding ("MOU")

22   between the DSA and the County.  SUF ¶¶ 48-49.  Initially, on April 16, 2012, the DSA

23   filed a grievance with Hoagland (Plaintiff's immediate supervisor).  Id. at ¶ 49.  That

24   grievance was denied in a letter from Williams on April 25, 2012.  Id. at ¶ 50.  Then, on

25   or about May 2, 2012, the DSA filed an appeal with D'Agostini, which was also ultimately

26   denied.  Id. at ¶ 51.  Additionally, on May 22, 2012, the DSA filed an appeal with the

27   County's human resources director.  Id. at ¶ 52.  The director ruled that the Sheriff had

28   the managerial right to determine assignments and found insufficient evidence that

4

1   Plaintiff's reassignment was retaliatory.  Id. at ¶ 53.  At the same time, however, the

2   director also recognized the DSA's right to negotiate the impact of any reassignments

3   prior to their implementation.  On that basis, the director found that the sheriff needed to

4   restore Plaintiff and the other reassigned deputies back to their detective positions.  Id.

5   at ¶ 53.  D'Agostini and Williams believed that the director exceeded his authority in

6   ordering the deputies be reinstated as detectives, and consequently refused to comply

7   with his decision.  SUF ¶ 54.  Instead of filing an appeal with the Civil Service

8   Commission or proceeding to arbitration (as outlined in the MOU), the DSA filed a writ of

9   mandate in superior court challenging D'Agostini's failure to implement the director's

10  remedy.  D'Agostini and the County filed demurrers, which the court sustained without

11  leave to amend.  Id. at ¶ 55.

12      After receiving notice of his reassignment, Defendants allege that Plaintiff went on

13  medical leave and never returned to work.  SUF ¶¶ 37, 44.  On July 31, 2012, Plaintiff

14  submitted written notice of his intent to retire from the Sheriff's Department as of

15  September 8, 2012.  Id. at ¶ 47.

16      In his operative FAC, Plaintiff alleges that D'Agostini and Williams violated his

17  constitutional rights by reassigning him to the patrol unit and forcing him into retirement

18  in retaliation for exercising his free speech rights.  FAC at ¶ 4.  Defendants bring the

19  instant motions seeking summary judgment, or, in the alternative, partial summary

20  judgment.  ECF No. 31; ECF No. 32.  Those motions are GRANTED in part and DENIED

21  in part.

22

23                              **STANDARD**

24

25      The Federal Rules of Civil Procedure provide for summary judgment when "the

26  pleadings, depositions, answers to interrogatories, and admissions on file, together with

27  affidavits, if any, show that there is no genuine issue as to any material fact and that the

28  moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex

1  Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is

2  to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

3      Rule 56 also allows a court to grant summary judgment on part of a claim or

4  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

5  move for summary judgment, identifying each claim or defense—or the part of each

6  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

7  Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a

8  motion for partial summary judgment is the same as that which applies to a motion for

9  summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

10  Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir.1998) (applying summary

11  judgment standard to motion for summary adjudication).

12      In a summary judgment motion, the moving party always bears the initial

13  responsibility of informing the court of the basis for the motion and identifying the

14  portions in the record "which it believes demonstrate the absence of a genuine issue of

15  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

16  responsibility, the burden then shifts to the opposing party to establish that a genuine

17  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

18  Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

19  253, 288–89 (1968).

20      In attempting to establish the existence or non-existence of a genuine factual

21  dispute, the party must support its assertion by "citing to particular parts of materials in

22  the record, including depositions, documents, electronically stored information,

23  affidavits[,] or declarations ... or other materials; or showing that the materials cited do

24  not establish the absence or presence of a genuine dispute, or that an adverse party

25  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c) (1).  The

26  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

27  might affect the outcome of the suit under the governing law.  Anderson v. Liberty

28  Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of

1    W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party

2    must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the

3    evidence is such that a reasonable jury could return a verdict for the nonmoving party."

4    Id. at 248.  In other words, the judge needs to answer the preliminary question before

5    the evidence is left to the jury of "not whether there is literally no evidence, but whether

6    there is any upon which a jury could properly proceed to find a verdict for the party

7    producing it, upon whom the onus of proof is imposed."  Id. at 251 (quoting Improvement

8    Co. v. Munson, 14 Wall. 442, 81 U.S. 442, 448, 20 L. Ed. 867 (1871)).  As the Supreme

9    Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its

10   opponent must do more than simply show that there is some metaphysical doubt as to

11   the material facts."  Matsushita, 475 U.S. at 586.  Therefore, "[w]here the record taken

12   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is

13   no 'genuine issue for trial.'"  Id.

14        In resolving a summary judgment motion, the evidence of the opposing party is to

15   be believed, and all reasonable inferences that may be drawn from the facts placed

16   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

17   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

18   obligation to produce a factual predicate from which the inference may be drawn.

19   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,

20   810 F.2d 898 (9th Cir.1987).

21

22                                        **ANALYSIS**

23

24        Plaintiff alleges that Defendants discriminated against him on the basis of age

25   and took retaliatory actions against him for opposing changes within the Sheriff's

26   Department.  Defendants seek summary judgment on each of the claims for relief

27   alleged against them, arguing that the undisputed facts demonstrate that Defendants

28   never engaged in the alleged discriminatory or retaliatory conduct.  As explained below,

                                             7

summary judgment is DENIED with respect to the following claims: First Amendment retaliation; retaliation under California law; violation of Plaintiff's equal protection rights; and age discrimination under both state and federal law.  Also, summary judgment is DENIED for Plaintiff's due process claim to the extent it relates to Plaintiff's alleged constructive discharge, and GRANTED to the extent it concerns his reassignment from detective to the patrol unit.  Finally, summary judgment is DENIED for Plaintiff's § 1102.5 retaliation claim insofar as it relates to Plaintiff's alleged opposition to the rotation policy and GRANTED with regard to Plaintiff's opposition concerning the retired police officer volunteers.

## A.    First Claim for Relief: Violation of the First Amendment

Defendants first move for summary judgment as to Plaintiff's First Amendment retaliation claim.  Under these circumstances, the Court evaluates five factors to determine whether a public employee's speech rights have been violated:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken adverse employment action absent the protected speech.

Dahlia v. Rodriguez, 735 F.3d 1060, 1067 (9th Cir. 2013) (quoting Eng v. Cooley, 552 F. 3d 1062, 1070 (9th Cir. 2009)).  Each of the above elements must be met and are "independently necessary" to the First Amendment claim.  Id. at n.4.  Defendants argue that Plaintiff cannot establish any of the first three factors.  For the following reasons, the Court disagrees.

### 1.    Whether Plaintiff spoke on a matter of public concern

First, whether speech addresses a matter of public concern is determined by reviewing the content, form and context of the statement.  Connick v. Myers, 461 U.S. 138, 147-148 (1983).  Simple workplace grievances are not considered public concerns, but information that is of inherent "relevance to the public's evaluation of the

1  performance of government agencies" falls within that realm.  Johnson v. Multnomah

2  County, Or., 48 F.3d 420, 425 (9th Cir. 1995) (citations and internal quotations omitted).

3      Defendants claim that Plaintiff did not speak out on a matter of public concern

4  because his statements reflected his own self-interest in his job security rather than

5  broader societal concerns.  ECF No. 32-1 at 13.  However, it is undisputed that Plaintiff

6  vocally opposed the use of volunteers in the property division and cited worries about

7  the chain of custody for evidence and controlling leaks of information.  SUF ¶ 10.  Based

8  on these statements, Plaintiff's concerns appear focused on the integrity of the police

9  force and the ability to solve crimes unimpeded by potential media scrutiny, which are

10 issues relevant to the public's evaluation of the government's performance.  Plaintiff's

11 own job security was not at issue here because he was assigned to the homicide

12 division and not the property division.

13     Similarly, with respect to the rotation policy, Plaintiff alleges in his deposition that

14 when he spoke out against the policy, he expressed worries about potential age

15 discrimination within the department and the competency of unmotivated and

16 inexperienced rotational detectives.  Fitzgerald Depo. Pl.'s Exh. C, ECF No. 40-1, at

17 228:5-230:17.  "[T]he competency of the police force is surely a matter of great public

18 concern."  McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983).  Likewise,

19 potential discrimination within a county's police force relates to public concerns.  See

20 Givhan v. Western Line Consolidated School District, 439 U.S. 410, 412-13 (1979)

21 (concerning a teacher that had been fired after complaining about school policies she

22 perceived as racially discriminatory).  Thus, there are genuine issues of material fact

23 such that a jury could find for Plaintiff on this factor.

24          **2.      Whether Plaintiff spoke as a private citizen or a public
                      employee**

25

26     Second, First Amendment protections for public employees only apply when the

27 employee speaks as a private citizen as opposed to as a public employee.  Eng.,

28 552 F.3d at 1070.  A government employee acts as a private citizen if "the speaker had

9

1    no official duty to make the questioned statements, or if the speech was not the product

2    of performing the tasks the employee was paid to perform."  Id. at 1071 (internal

3    quotation marks and citations omitted).  Furthermore, statements do not lose First

4    Amendment protection simply because they concern "the subject matter of [the plaintiff's]

5    employment."  Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir.2006); see Garcetti v.

6    Ceballos, 547 U.S. 410, 421 (2006).  On the other hand, a person is acting as a public

7    employee when their actions and speech are made "pursuant . . . to official duties."

8    Dahlia, 735 F.3d at 1068 (citation and internal quotations omitted); compare Ceballos,

9    547 U.S. at 421 (a deputy district attorney's memo to supervisors concerning a search

10   warrant affidavit was written pursuant to his official duties); and Freitag, 468 F.3d at 546

11   (prison guard's internal reports of inmate sexual misconduct were made pursuant to her

12   official duties); with Marable v. Nitchman, 511 F.3d 924, 932-33 (9th Cir. 2007) (chief

13   ferry engineer's internal and external complaints of corrupt financial practices by

14   managers in the ferry system were entirely outside his official duties as a ferry engineer).

15        Defendants argue that Plaintiff did not act as a private citizen because his

16   supervisors elicited his statements regarding the volunteers and the rotation policy and

17   because his complaints remained within the internal chain of command.  ECF 32-1 at 13;

18   ECF 31-1 at 17.  However, the fact that Plaintiff's statements were confined to the chain

19   of command is not dispositive.  Dahlia, 735 F.3d at 1074; see Ceballos, 547 U.S. at 420

20   ("That Ceballos expressed his views inside his office, rather than publicly, is not

21   dispositive.").  Also, Plaintiff presents evidence that he assisted in filing a grievance

22   against the rotation policy and that he drafted and presented proposed changes to that

23   policy.  Strasser Depo. at 109:20-110:13, 123:14-16; Strasser Decl. at ¶¶ 5-6; Proposed

24   Changes and Justifications Pl.'s Ex. 18, ECF No. 38, at 143-45.  Participation in a union

25   grievance process may fall outside the official duties of a police detective because of the

26   "inherent institutional conflict of interest between an employer and its employees' union."

27   See Ellins v. City of Sierra Madre, 710 F.3d 1049, 1060 (9th Cir. 2013) (holding that a

28   reasonable jury could find that an officer acted as a private citizen when he served as

1   representative and president of his police union).  Although the MOU between the DSA

2   and the County provided for a grievance process, there is no evidence that participating

3   in this grievance process was a requirement of Plaintiff's position.  Therefore, there is

4   sufficient evidence to raise a genuine issue of material fact concerning whether he acted

5   within his official job duties, and, in turn, whether he acted as a private citizen or public

6   employee.

7           **3.**    **Whether Plaintiff's speech was a substantial or motivating**
                    **factor in an adverse employment action**

8

9         Finally, for Plaintiff to succeed, his protected speech must have been a

10  substantial or motivating factor in an adverse employment action.  Defendants argue

11  both that Plaintiff cannot show either an adverse employment action or the requisite

12  causation.

13          **a.**    **Adverse Employment Action**

14        Defendants first argue that Plaintiff was not subject to an adverse employment

15  action.  ECF 32-1 at 14; ECF 31-1 at 18.  The Court disagrees.  There are facts before

16  the Court on which a reasonable jury could rely to find an adverse employment action

17  based on: (1) Plaintiff's reassignment to patrol alone; or (2) Plaintiff's constructive

18  discharge generally.[5]

19        Actions are adverse when they are "reasonably likely to deter" the exercise of

20  protected First Amendment rights.  <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 976 (9th

21  Cir. 2003).  Accordingly, a jury could find that Plaintiff's reassignment to the patrol unit, in

22  and of itself, would have deterred him from speaking out against the potential volunteers

23  and the rotation policy.  <u>See</u> <u>Allen v. Scribner</u>, 812 F. 2d 426, 428 (9th Cir. 1987) (finding

24            [5] Defendants also argue that other conduct not discussed here did not by itself constitute adverse
    employment actions.  Since Plaintiff does not argue to the contrary, the Court assumes Plaintiff agrees

25  and does not address those arguments.  In addition, D'Agostini and William assert that they were not
    involved in either: (1) a decision to repossess Plaintiff's company car and keys; or (2) a decision to make

26  late night calls to Plaintiff from dispatch.  However, Plaintiff has presented sufficient evidence that the
    majority of decisions within the department are made from the sheriff to the undersheriff and then to the

27  officers below them.  Hoagland Depo. Pl.'s Ex. E, ECF No. 38, at 105:1-6.  In light of this evidence, there
    is a triable issue of fact as to whether D'Agostini and Williams were involved in these decisions.

28

1    an allegation that plaintiff had been "reassigned to another position, and otherwise

2    harassed in retaliation for . . . remarks he made to the press" sufficient to form basis of

3    First Amendment claim) (emphasis added).

4           Moreover, a jury could also find Plaintiff suffered an adverse employment action

5    through his constructive discharge.  Constructive discharge occurs when, "looking at the

6    totality of the circumstances, 'a reasonable person in [the employee's] position would

7    have felt that he was forced to quit because of intolerable and discriminatory working

8    conditions.'"  Watson v. Nationwide Ins. Co., 823 F.2d 360, 361 (9th Cir.1987) (alteration

9    in the original).  "Whether working conditions were so intolerable and discriminatory as to

10   justify a reasonable employee's decision to resign is normally a factual question for the

11   jury."  Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1411 (9th Cir.1996) (quoting

12   Sanchez v. City of Santa Ana, 915 F.2d 424, 431 (9th Cir. 1990)).  "Demotion, even

13   when accompanied by a reduction in pay, does not by itself trigger a constructive

14   discharge."  King v. AC & R Advert., 65 F.3d 764, 768-69 (9th Cir.1995) (quoting Turner

15   v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1247 (1994)).  There must be a showing of

16   "aggravating factors, such as a continuous pattern of discriminatory treatment."  Watson,

17   823 F.2d at 361 (citations and internal quotation marks omitted).

18          Here, there is no dispute that Plaintiff was reassigned from the investigations unit

19   to the patrol unit and that this transfer reduced his pay by 5 percent.  While the demotion

20   and pay cut on their own would likely not be sufficient for a reasonable jury to find

21   constructive discharge, King, 65 F.3d at 768-69, Plaintiff alleges several additional

22   aggravating factors that raise a genuine issue of material fact as to whether a

23   reasonable person in the same circumstances would have felt no other option but to

24   retire.  First, in Yaws' Deposition, he claims that Hoagland made derogatory comments

25   on several occasions about Plaintiff and his age because he was angry at Plaintiff for his

26   opposition to the rotation policy.  Among other things, Hoagland apparently said "that

27   fucking guy" in reference to Plaintiff and commented that Plaintiff was a "crotchety old

28   man."  DF ¶¶ 119, 137.  Second, Plaintiff asserts that he was ordered to return his car

1    and keys on March 29, 2012, shortly after he went on medical leave, but before his

2    reassignment to patrol was to go into effect.  Finally, Plaintiff avers that Strasser asked

3    Hoagland on his behalf if he could be assigned to an alternative position because he

4    was concerned about his physical ability to perform the duties of a patrol officer.

5    Hoagland never inquired if other positions were available, even though there was

6    allegedly a vacancy.  Viewed in the light most favorable to Plaintiff, these additional

7    factors provide a sufficient basis from which a jury could find an "intolerable and

8    discriminatory" working environment and constructive discharge.  See Watson, 823 F.2d

9    at 361.

10                      **b.      Substantial or Motivating Factor**

11          Plaintiff must nonetheless still show a causal link between his protected speech

12   and the adverse action.  This circuit has set forth three ways to show causation: (1) "the

13   proximity in time between the protected speech and the retaliatory employment

14   decision"; (2) "evidence that his employer expressed opposition to his speech, either to

15   him or others"; and (3) "evidence that his employer's proffered explanations for the

16   adverse action were false and pre-textual."  Coszalter, 320 F.3d at 977.

17          As to the first factor, to be sufficient, the temporal proximity must be "very close."

18   Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Some courts have

19   found that time lapses of three or more months, standing alone, are insufficient to

20   establish causality.  Id. (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.

21   1997) (3 month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th

22   Cir. 1993) (4 month period insufficient)).  However, the Ninth Circuit has made clear that

23   there is no period of time that is "per se too long" and that causation is "a question of fact

24   that must be decided in light of the timing and the surrounding circumstances."

25   Coszalter, 320 F.3d at 977-78 ("Depending on the circumstances, three to eight months

26   is easily within a time range that can support an inference of retaliation.").  Here,

27   approximately four months passed between the time Plaintiff made his final opposition to

28   the rotation policy in late November 2011 and the notification of his reassignment to the

1    patrol unit on March 29, 2012.  Given the undisputed fact that D'Agostini and Williams

2    had originally withdrawn the policy in late November, a reasonable jury could infer that

3    Defendants waited a few months before finally implementing the rotation policy to let

4    some of the initial disagreements over the policy die down and to distance the

5    reassignment decision from Plaintiff's opposition thereto.

6         Plaintiff also points to evidence supporting the second factor, namely that

7    Defendants' explanation for the reassignment was pre-textual.  A plaintiff can

8    demonstrate pretext by showing "weaknesses, implausibilities, inconsistencies,

9    incoherencies, or contradictions in the employer's . . . reasons for its action," which "a

10   reasonable fact finder could rationally find . . . unworthy of credence."  Hersant v. Dep't

11   of Social Serv., 57 Cal. App. 4th 997, 1005 (1997).  According to Defendants, Williams

12   told Hoagland that one of the four detectives reassigned to the patrol unit must be one of

13   the two detectives who had been in the unit the longest.  ECF No. 31-1 at 20.

14   Defendants contend that it was mere coincidence that Plaintiff and Strasser were the two

15   most senior detectives in the unit and that Hoagland, not D'Agostini or Williams, was the

16   individual that ultimately chose Plaintiff for reassignment.  Id.

17        However, Plaintiff provides evidence casting doubt on Defendants' explanations.

18   First, Plaintiff alleges that he was one of the most vocal opponents of the rotation policy.

19   In his deposition, Plaintiff testified that he expressed his age discrimination concerns to

20   Spears in a one-on-one meeting in his office.  Plaintiff also presents evidence that he

21   prepared amendments to the rotation policy and presented those amendments to

22   Hoagland and Spear, and that, in his role as "patriarch" of the unit, he took the lead on

23   opposing the rotation policy and filing the grievance against the policy.  Based on this

24   evidence, a reasonable fact finder could find that Defendants' motivation for reassigning

25   Plaintiff to the patrol unit was in retaliation for his protected speech regarding the rotation

26   policy.  As such, there is a genuine issue of material fact as to causation.  Defendants'

27   Motions for Summary Judgment as to the First Amendment retaliation claim are

28   DENIED.

1

### 4.     Qualified Immunity

2     Defendants D'Agostini and Williams also seek summary judgment with respect to

3   Plaintiff's First Amendment claim on the basis that they are entitled to qualified immunity.

4   ECF 31-1 at 21.  Defendants' instant argument is rejected.

5     Public officials sued in their individual capacity, as here, are immune from suit if

6   "their conduct [did] not violate clearly established statutory or constitutional rights of

7   which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818

8   (1982); Saucier v. Katz, 533 U.S. 194, 201 (2001).  In deciding whether an official is

9   entitled to qualified immunity, the Supreme Court has articulated a two-prong approach:

10   first, whether the officer's conduct violated a constitutional right; and second, whether the

11   right was clearly established.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).

12     As set forth above, Plaintiff has presented sufficient evidence to demonstrate that,

13   viewed in the light most favorable to Plaintiff, Defendants' alleged wrongdoing violated

14   his First Amendment rights.  Accordingly, the question for the Court is whether Plaintiff's

15   constitutional rights were clearly established such that "it would be clear to a reasonable

16   officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at

17   202.

18     "[A] district court should decide the issue of qualified immunity as a matter of law

19   when 'the material, historical facts are not in dispute, and the only disputes involve what

20   inferences properly may be drawn from those historical facts.'" Conner v. Heiman,

21   672 F.3d 1126, 1131 (9th Cir. 2012) (internal citations and quotations omitted).  "Only

22   where 'historical facts material to the qualified immunity determination are in dispute'

23   should the district court submit the issue to a jury." Id. (internal citations and quotations

24   omitted).  When analyzing a claim of qualified immunity, the court must view the facts in

25   the light most favorable to the plaintiff.  Friedman v. Boucher, 580 F.3d 847, 852 (9th Cir.

26   2009).

27     Here, D'Agostini and Williams argue that it would not have been clear to a

28   reasonable officer that Plaintiff's comments were regarding a matter of public concern.

1   ECF No. 31-1 at 22.  Yet, their position largely ignores a fairly significant dispute

2   between the parties: whether Plaintiff's complaints included public safety concerns, as

3   Plaintiff alleges, or whether he only made self-serving inquiries about his own job, as

4   Defendants contend.  "Pre-trial dismissal on qualified immunity grounds is inappropriate

5   if the plaintiff establishes that material issues of fact exist."  McSherry v. City of

6   Long Beach, 423 F.3d 1015, 1022 (9th Cir.2005).  Viewed in the light most favorable to

7   Plaintiff, his speech concerned public safety, age discrimination, and the integrity and

8   effectiveness of the police force, which were clearly established matters of public

9   concern at the time Plaintiff allegedly voiced his opposition.  See McKinley, 705 F.2d at

10   1114; see also Givhan, 439 U.S. at 412-13.

11       Additionally, D'Agostini and Williams argue that it would not have been clear to a

12   reasonable officer that Plaintiff was acting as a private citizen when he made comments

13   at staff meetings about volunteers in May 2011 and concerning the rotation policy in

14   November 2011.  Again, however, there is a dispute as to the content and extent of

15   Plaintiff's opposition to the volunteer proposal and the rotation policy, which precludes a

16   finding that no reasonable officer would have known Plaintiff was acting as a private

17   citizen.  See McSherry 423 F.3d at 1022.  Moreover, D'Agostini and Williams have not

18   provided any evidence on the scope of Plaintiff's job duties, and, as described above,

19   Plaintiff's statements and actions appear to fall outside the scope of his work

20   responsibilities.  As such, when Plaintiff "comment[ed] upon matters of public concern as

21   a citizen and not pursuant to his job responsibilities, his speech was protected by the

22   First Amendment—that rule had long been the law of the land."  See Eng, 552 F.3d at

23   1075-76 (internal quotations and citations omitted).  Accordingly, summary judgment on

24   qualified immunity grounds would be premature.

25       **B.    Second Claim for Relief: Due Process Violation**

26       Defendants next contend that a reasonable jury could not find a due process

27   violation.  They are partially correct.

28   ///

1   The Fourteenth Amendment's guarantee of procedural due process applies when

2   a constitutionally protected liberty or property interest is at stake.  Board of Regents v.

3   Roth, 408 U.S. 564, 569 (1972).  To survive summary judgment on a due process claim,

4   a public employee has to allege facts from which a reasonable fact finder can conclude

5   that: (1) the employer deprived the employee of a property interest; and (2) it did so

6   without due process of law.  Huskey v. City of San Jose, 204 F.3d 893, 900 (9th Cir.

7   2000).  It is undisputed that Plaintiff was reassigned from the investigations unit to the

8   patrol unit and that he subsequently retired.  The parties' dispute lies in whether Plaintiff

9   was deprived of a constitutionally protected property interest.

10   Plaintiff argues that he had a property interest in his position as a detective and

11   that he was constructively discharged.  ECF 43 at 19.  More specifically, Plaintiff

12   contends that he had a property interest in maintaining his detective assignment

13   because he was orally told by all of the former sheriffs, including Hal Barker, Jeff Neves

14   and Fred Kollar, that his assignment to investigations was a permanent lifetime position.

15   DF ¶ 129. Plaintiff further claims that Hoagland told him that D'Agostini appreciated the

16   value of experience and that Plaintiff would remain a detective.  Id.

17   Defendants concede that Plaintiff had a property interest in his job with the

18   Sheriff's Department.  ECF No. 32-1 at 14.  However, they argue that Plaintiff had no

19   property interest in his position as a detective.  According to Defendants, because

20   Plaintiff's assignment was terminable at the discretion of the sheriff, Plaintiff had no

21   legitimate entitlement to the position on an indefinite basis.  Id. at 16.  Defendants further

22   assert that Plaintiff has only established that he voluntarily retired and has not provided

23   sufficient evidence that he was constructively discharged.  Id. at 12.

24   Although one's actual job as a tenured civil servant is property, see, e.g.,

25   Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39 (1985), the maintenance of

26   a particular assignment, similar to a promotion, does not fit within that same category.

27   Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998).  As the Supreme Court

28   has explained, property interests are not created by the Constitution, but rather by

17

1  "existing rules or understandings that stem from an independent source such as state

2  law." Roth, 408 U.S. at 577.  In California, the terms and conditions of public

3  employment are generally "fixed by the statute, rules or regulations creating it, not by

4  contract (even if one is involved)." Williams v. Los Angeles City Department of Water

5  and Power, 130 Cal. App. 3d 677, 680 (1982).

6        Plaintiff does not identify any California law that creates a property interest in a

7  particular police assignment, and instead points only to the oral assurances or promises

8  he received from former sheriffs and Hoagland that he had a permanent detective

9  position.  These oral statements do not suffice.  Absent a state law on the matter, words

10  or conduct are insufficient to form a property interest.  See Nunez, 147 F.3d at 875 n.7

11  (citing Perry v. Sindermann, 408 U.S. 593, 601–02 (1972)).  "[T]here must be rules or

12  mutually clear understandings securing the commitment." Id.  As such, Plaintiff has not

13  met his burden to show a genuine issue of material fact as to whether he had a property

14  interest in his detective position.  See Roth, 408 U.S. at 577.  The Motions for Summary

15  Judgment as to Plaintiff's claim that he was denied due process in being reassigned

16  from the investigations unit to the patrol unit are GRANTED.

17        Plaintiff also contends, however, that he was constructively discharged.

18  Permanent state employees hold a property interest in their job which is protected by

19  due process. Freitag, 468 F.3d at 548.  This interest contains the right to continued

20  employment free from disciplinary measures without cause. Skelly v. State Personnel

21  Bd., 15 Cal. 3d 194, 207-08 (1975).  One type of disciplinary measure is a constructive

22  discharge.  As set forth above, Plaintiff has alleged sufficient evidence to survive

23  summary judgment on his due process claim to the extent it turns on a constructive

24  discharge theory.

25        That said, Defendants claim that even if Plaintiff were constructively discharged,

26  his claim still fails because he received all the process he was due.  The Court

27  disagrees.

28  ///

1  Defendants offer evidence that under the rules of the El Dorado County

2  Personnel Management, there is an appeal process for employees who feel they have

3  been coerced into resignation.  SUF ¶ 56.  These rules, however, do not set forth any

4  process to be afforded prior to a constructive discharge.  Due process generally requires

5  "'that an individual be given an opportunity for a hearing <u>before</u> he is deprived of any

6  significant property interest.'"  <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542

7  (1985) (quoting <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379, (1971)).  Given the lack of

8  evidence of processes available pre-discharge, Defendants' Motions for Summary

9  Judgment on Plaintiff's due process claim is DENIED.

10  **C.   Second Claim for Relief: Equal Protection Violation**

11  Defendants next seek judgment on Plaintiff's equal protection claim.  To establish

12  a § 1983 equal protection violation, a plaintiff must show "that the defendants, acting

13  under color of state law, discriminated against [him] as [a] member[] of an identifiable

14  class and that the discrimination was intentional."  <u>Flores v. Morgan Hill Unified Sch.</u>

15  <u>Dist.</u>, 324 F.3d 1130, 1134 (9th Cir.2003).  That is, a plaintiff must show that the

16  defendant acted with an intent or purpose to discriminate against him based upon his

17  membership in a protected class.  <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir.

18  2003).

19  Age is not a suspect classification under the Equal Protection Clause.  <u>Kimel v.</u>

20  <u>Florida Bd. of Regents</u>, 528 U.S. 62, 83 (2000).  "States may discriminate on the basis of

21  age without offending the Fourteenth Amendment if the age classification in question is

22  rationally related to a legitimate state interest."  <u>Id.</u>  The rational basis test requires a

23  showing that "the varying treatment of different groups or persons is so unrelated to the

24  achievement of any combination of legitimate purposes that we can only conclude that

25  the [government's] actions were irrational."  <u>Id.</u> at 84 (citation and quotations omitted).

26  In the present case, Plaintiff alleges that he was reassigned to the patrol unit, in

27  part, based on his age, and he argues that there was no rational basis for this decision.

28  ECF No. 43 at 20.  Defendants argue that the rotation policy was rationally related to a

19

1  government interest because there were varying views on the rotation policy within the

2  department, a survey showed some employees wanted more opportunities as

3  detectives, and a Grand Jury report indicated there were limited investigation

4  opportunities for female officers.  ECF 32-1 at 18.  Yet, Plaintiff presents evidence that

5  the rotation policy served no legitimate purpose because there was already consistent

6  movement in and out of the investigations unit.  DF at ¶ 117.  Based on this evidence,

7  there is a genuine issue of material fact as to the rationality of the rotation policy.

8  Defendants' Motions for Summary Judgment on Plaintiff's claim for violation of the equal

9  protection clause are therefore DENIED.

10       **D.    Third Claim for Relief: Age Discrimination**

11       Plaintiff asserts a claim of age discrimination under the Federal Employment

12  Housing Act and the federal Age Discrimination in Employment Act.  FAC at ¶ 47-54.  To

13  succeed under both laws, Plaintiff must demonstrate that he was: (1) a member of the

14  protected class (at least age 40); (2) performing his job satisfactorily; (3) subject to an

15  adverse employment action; and (4) replaced by a substantially younger employee.

16  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000).  If Plaintiff

17  establishes these elements, then the burden shifts to Defendants to articulate a

18  legitimate nondiscriminatory reason for their employment decision.  Id.  Then, Plaintiff

19  must show that Defendants' reason is a pretext for a discriminatory motive.  Id.

20       In Plaintiff's case, it is undisputed that he was over 40 years old, and Defendants

21  do not make an argument that he was not qualified for his position as detective or that

22  he was not replaced by a significantly younger person.  ECF 32-1 at 18.  Defendants'

23  argument is that Plaintiff did not suffer a materially adverse action because he was

24  merely involuntarily transferred.  Id.  It is undisputed that at all times he remained a

25  Deputy Sheriff II.  Yet, it is also undisputed that Plaintiff was reassigned to the patrol unit,

26  and that he made 5 percent more as a detective.  Whether or not Plaintiff's reassignment

27  to the patrol unit constitutes an adverse employment action is a question for the jury.

28  Also, as discussed above, there is sufficient evidence of constructive discharge to create

1   a genuine issue of material fact.  Therefore, Defendant County's Motion for Summary

2   Judgment on Plaintiff's claim for age discrimination is DENIED.

3   **E.      Fourth Claim for Relief: California Labor Code section 1102.5 Retaliation**

4

5   Plaintiff's Fourth Claim for Relief arises under section 1102.5 of the California

6   Labor Code.  Section 1102.5 is a "whistleblower" statute that establishes liability for

7   employers who retaliate against their employees for disclosing information to

8   government or law enforcement agencies.  Specifically, section 1102.5 provides, in

9   relevant part:

10      (b) An employer may not retaliate against an employee for
        disclosing information to a government or law enforcement
11      agency, where the employee has reasonable cause to
        believe that the information discloses a violation of state or
12      federal statute, or a violation or noncompliance with a state or
        federal rule or regulation.

13

14  Accordingly, to establish a prima facie case of retaliation under section 1102.5(b),

15  a plaintiff must show that: (1) he engaged in protected activity; (2) his employer

16  thereafter subjected him to an adverse employment action; and (3) a causal link

17  between the two.  Mokler v. County of Orange, 157 Cal. App. 4th 121, 138 (2007)

18  (quoting Patten v. Grant Joint Union High Sch. Dist., 134 Cal. App. 4th 1378, 1384

19  (2005)).  Defendant County argues that Plaintiff fails to show that he engaged in

20  protected activity.  ECF 32-1 at 23.  For the following reasons, the Court agrees in part

21  and disagrees in part.

22  An employee engages in protected activity when he "discloses to a governmental

23  agency reasonably based suspicions of illegal activity."  Id. at 138 (emphasis added)

24  (internal quotation marks omitted); see also Cal. Labor Code § 1102.5(b).  The

25  employee must "reasonably believe [ ]he was disclosing a violation of state or federal

26  law."  Patten, 134 Cal. App. 4th at 1386.  To have a reasonably based suspicion of

27  illegal activity, the employee must be able to point to some legal foundation for his

28  suspicion—some statute, rule or regulation which may have been violated by the

1    conduct he disclosed.  Love v. Motion Indus., Inc., 309 F. Supp. 2d 1128, 1135 (N.D.

2    Cal. 2004) (concluding that without citing to "any statute, rule or regulation that may have

3    been violated by the disclosed conduct," plaintiff lacked "any foundation for the

4    reasonableness of his belief").

5         Here, Plaintiff does not argue that using retired police officers as volunteers is an

6    illegal activity.  Instead, Plaintiff contends that section 1102.5 prevents retaliation against

7    employees who report working conditions they believe to be unsafe, even absent a

8    reasonable belief of illegal activity.  It follows, Plaintiff reasons, that he was opposing

9    actions that would have compromised officer and victim safety through confidential

10   leaks.  However, the case law Plaintiff cites in support of this proposition is inapposite

11   because it interprets an entirely different section of the Labor Code.  See Freund v.

12   Nycomed, 347 F.3d 752, 761 (9th Cir. 2003); Hentzel v. Singer Co., 138 Cal. App. 3d

13   290, 299-300 (1982).  Accordingly, Defendant County's Motion for Summary Judgment

14   on section 1102.5 retaliation connected to Plaintiff's opposition of the volunteer policy is

15   GRANTED.

16        The Court reaches a different conclusion in regard to the rotation policy.  Although

17   Plaintiff fails to raise the point in his Opposition, the Court recognizes that opposing an

18   allegedly discriminatory rotation policy would qualify as raising a suspicion of illegal

19   activity.  See Cal. Gov't Code § 12941 (prohibiting employment discrimination against

20   individuals over forty).  Plaintiff argues that he opposed the rotation policy because he

21   feared it would lead to age discrimination.  Taken as true, his opposition to the policy

22   constitutes protected activity.  See id.  He further contends that, because of this

23   protected activity, he was reassigned from detective to the patrol unit and, thereafter,

24   was constructively discharged.  In support of his theory, Plaintiff puts forward evidence

25   that he vocalized his opposition to Spear, assisted in filing a grievance against the

26   policy, and provided a written alternative rotation proposal to Hoagland.  According to

27   Plaintiff, he was one of the most vociferous opponents of the rotation policy.  Based on

28   this evidence, there is sufficient basis for a reasonable jury to infer that D'Agostini and

1   Williams were aware that Plaintiff had engaged in protected activity and that his

2   reassignment and alleged constructive discharge were connected to his protected

3   activity.  Thus, Defendant County's Motion for Summary Judgment on section 1102.5

4   retaliation connected to Plaintiff's opposition of the rotation policy is DENIED.

5   **F.      Fifth Claim for Relief: FEHA Retaliation**

6          Finally, under the California Fair Employment and Housing Act ("FEHA"), it is

7   unlawful for an employer "to discharge, expel, or otherwise discriminate against any

8   person because the person has opposed any practices forbidden under this part or

9   because the person has filed a complaint, testified, or assisted in any proceeding under

10  this part."  Cal. Gov't Code § 12940(h).  To establish a prima facie case of retaliation

11  under this section, Plaintiff must show: (1) he engaged in protected activity; (2) he was

12  thereafter subject to adverse employment action; and (3) there was a causal link

13  between the two.  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

14         As explained in more detail above, Plaintiff presents sufficient evidence for a

15  reasonable jury to find that he opposed the rotation policy because he feared potential

16  age discrimination.  Because age discrimination is prohibited under FEHA, Plaintiff's

17  allegations, taken as true, provide sufficient evidence to show he was engaged in a

18  protected activity.  See Cal. Gov't Code § 12941.  Plaintiff similarly provides enough

19  evidence to raise a genuine issue of material fact as to whether there was an adverse

20  employment action and whether there was a causal connection between the protected

21  activity and the alleged adverse action.  Accordingly, Defendant County's Motion for

22  Summary judgment as to Plaintiff's FEHA retaliation claim is DENIED.

23

24                                **CONCLUSION**

25

26         As set forth above, Defendants' Motion to Strike (ECF No. 33) is DENIED, and

27  Defendants' Motions for Summary Judgment (ECF No. 31, ECF. No. 32) are GRANTED

28  in part and DENIED in part as follows:

1    1.    Summary judgment is DENIED as to Plaintiff's First Claim for Relief for

2    violation of his First Amendment rights and as to Defendants' qualified immunity

3    defense;

4    2.    Summary judgment is DENIED as to Plaintiff's Second Claim for Relief

5    alleging violations of his due process rights to the extent it relates to Plaintiff's alleged

6    constructive discharge and GRANTED to the extent it concerns his reassignment from

7    detective to the patrol unit;

8    3.    Summary judgment is DENIED as to Plaintiff's Second Claim for Relief

9    alleging violations of the Equal Protection Clause;

10    4.    Summary judgment is DENIED as to Plaintiff's Third Claim for Relief

11    alleging age discrimination under both federal and state law;

12    5.    Summary judgment is DENIED as to Plaintiff's Fourth Claim for Relief

13    arising under California Labor Code section 1102.5 to the extent it relates to Plaintiff's

14    alleged opposition to the rotation policy and GRANTED with regard to Plaintiff's

15    opposition of the retired police officer volunteers; and

16    6.    Summary judgment is DENIED as to Plaintiff's Fifth Claim for Relief arising

17    under California Government Code section 12940.

18    IT IS SO ORDERED.

19    Dated:  March 3, 2015

20

21

22    _____
      MORRISON C. ENGLAND, JR., CHIEF JUDGE
23    UNITED STATES DISTRICT COURT

24

25

26

27

28